THE PEOPLE, *ex rel.* Lent, *v.* HASCALL & ROBERTSON.

As against one who receives the property of an intestate under an agreement to take out letters of administration, and as against those who become his sureties upon the granting of such letters, it is to be presumed that the property remained in his hands until his appointment was perfected.

Evidence is inadmissible, to repel such presumption, that the administrator was insolvent and harassed with debts at the time of his appointment, and that immediately before it he had converted other trust funds to his own use.

APPEAL from the Supreme Court. Action upon a bond executed by the appellants as sureties for John J. McPherson as administrator, &c., of John A. McMartin, deceased. The condition of the bond was, that McPherson "should faithfully execute the trust reposed in him as such administrator, and should obey all orders of the surrogate of the county of Genesee touching the administration of the estate committed to him."

The bond was dated March 23d, 1857, on which day McPherson was appointed such administrator. The petition for the appointment was presented to the surrogate, and bore date December 29th, 1856, and the citation issued was returnable January 26th, 1857. The intestate died on the 14th of December, 1856, leaving Malcom McMartin, his father, surviving, but no wife or children. On the 17th of December after his death the intestate's father called on McPherson and requested him to take out letters of administration upon the estate of the deceased. This he then agreed to do. On the next day the father of the deceased delivered to McPherson a note, amounting, with interest, to $1,876.46, and cash $336.40, upon the understanding and agreement that he, McPherson, should take out the letters and act as the administrator of the deceased. McPherson died on the 24th of April, 1857, intestate, and an order was subsequently made by the surrogate of the county of Genesee requiring his administrators to file an inventory of the estate of McMartin. On the return of that order, it satisfactorily appearing to the surrogate that a large portion of the assets of McMartin, which came to McPherson's hands to be administered, had been converted by him to his own use : that no part thereof had come to the hands of his administrators; and that he had never returned an inventory, and that by reason of such conversion his administrators could not make and return one, the surrogate made an order that the bond given by McPherson on his appointment might be prosecuted by the relators.

Upon the trial the defendants offered to prove, as tending to show a conversion of the property by McPherson before his appointment as administrator, that at that time he was insolvent and pressed with executions against his property, and that immediately before then he had converted other trust funds to his own use. The evidence was rejected, and the defendants took an exception. The plaintiffs had a verdict for $694.37, upon which judgment was entered in their favor, and on appeal the same was affirmed at general term in the eighth district.

The defendants appealed to this court.

*Henry R. Selden*, for the appellants.

*C. F. Bissell*, for the respondents.

DAVIES, J.  It is claimed on the part of the defendants that there has been no breach of the bond; that McPherson, as administrator, did not convert and dispose of the assets of the deceased for the reason that, as administrator, he never had any assets in his hands.  It does not appear from the testimony at what period McPherson converted to his own use the assets placed in his hands, to be held and used by him as administrator.  In the absence of any proof to the contrary, we are to assume that he held these assets until his appointment of administrator was completed, and from thence, until the actual conversion, held them in that capacity.  This was his agreement: this was the understanding of the parties when the assets were placed in his hands.  Until the contrary appears we are to presume that he fulfilled his agreement and performed his duty.  We are not at liberty to speculate as to what he might have done, nor to infer that he violated his agreement in this instance and committed a fraud, because he was guilty of other breaches of trust.  The evidence offered of such violations of duty in those instances were properly rejected, as they did not tend to show that these assets were converted prior to March 23d.  The case of *Gottsberger et al.* v. *Taylor* (19 N. Y., 150) is quite in point.  There one Henry was appointed special administrator of an estate, and he employed one Smith as his agent to collect rents of the estate.  Smith, previous to 16th February, 1850, had collected $1,080, which he had not paid over, and was Henry's debtor to that amount.  On that day, Smith was appointed special administrator in the place of Henry.  In a suit upon Smith's bond his sureties contended that they were not liable for this amount, on the ground that it was not received by Smith as administrator.  But this court says that "the money collected by

Smith as agent for Henry, while the latter was collector of the estate, was received by Smith in a fiduciary character, and it would have been a violation of duty on his part to convert the same to his own use. " *The presumption then is* that this money remained in his hands at the time he gave the receipt to Henry. The character in which Smith held the money was then changed; before, he held it as the agent for Henry, after, in his official character as collector; then the liability of the sureties attached." Applying these principles to the present case, McPherson held these assets prior to his appointment as the agent of the administrator; upon his appointment he held them in his official character, and then the liability of the sureties attached. As he received them under an agreement to hold them to be delivered to himself as administrator, when clothed with that character, the presumption is, in the absence of any proof showing the time when he parted with them, that he continued thus to hold them, and that the same were received by him in his representative character; and, consequently, the liability of the surety attached.

The judgment of the Supreme Court should be affirmed, with costs.

SELDEN, J., did not sit in the case; all the other judges concurring,

Judgment affirmed.